Speak, J.
The grounds urged in support of the demurrer to the amended petition are two: 1. The pleading does not show but that the plaintiffs might maintain ejectment and reclaim the land itself. 2. Acts of the owner sufficient to show an estoppel to claim the land itself would, as against *640 a municipal corporation holding land for purposes of a street, amount to a dedication.
It was shown by the pleading that the city had wrongfully taken possession of the plaintiff’s property, and had devoted it to the purposes of a street,-a public use. No appropriation in accordance with law had been made, nor had compensation in money, or otherwise, been awarded the owners. The city simply took the property by force, and was continuing its unlawful use, refusing to yield it up to the owners and also refusing to make any compensation for it, thus disregarding the plaintiffs’ natural rights, and violating their constitutional right secured by that section of the constitution which provides that private property shall ever be held inviolate, but subservient to the public welfare, and where taken for public use, a compensation therefor shall first be made in money. In every aspect the city was a wrong-doer. It could have acquired a right to the land by appropriation, paying its value. This it chose not to do, but rather to incur the risks attending a wrongful seizure. Yet, while the act was wholly indefensible, the public, by it, obtained a valuable privilege in the use of the street. But the owners’ rights were not extinguished. They were entitled, unless prevented by their own acts or omissions, to recover the land itself, or to demand compensation for its value. If compensation would make them whole, and they were content to accept that in full satisfaction, and as an extinguishment of all right in and title to the land thus wrongfully taken, it would seem that no injustice would result by that remedy. Surely the city was not in a position to complain. It would appear to be common sense to say that where an owner discovers that a municipal corporation has seized his land and appropriated it to the use of a street, without process or payment, he may have his option either to repudiate the unlawful act and reclaim land, or assent to the seizure, ratify the act, and demand compensation, yielding to the corporation title to the land so taken. And we know of no rule of law which prevents the exercise of such option.
It is not stated in the pleading just what had been done to *641 the land in adapting it to the purposes of a street, but it is fair matter of inference that more or less work in the line of street improvement had beeD done upon' it, and that it had been changed from its original condition. The reclamation of the land by the plaintiffs would, necessarily, interrupt the occupation by the public of the street, and would thus, to a greater or less extent, interfere with the public convenience and welfare. So that a remedy which would avoid that disturbance of the public convenience would appear to be the one the law would favor, and, unless the attitude of the plaintiffs, as shown by the pleading, was such as to forbid such remedy to them, compensation would best satisfy the demands of justice.
By the sustaining of the demurrer upon the grounds on which it was placed, the plaintiffs were told that their only chance for justice was to go into court and ask that the public be ousted from the use of the street, and that they be put in possession of the land — this because, upon their own showing, they had done nothing-to estop them from resorting to that remedy; and further, if they averred acquiescence in the appropriation in such terms as to show themselves estopped to resort to ejectment, that would amount to a dedication, and then they could have no remedy at all.
The cases of Hatch v. Railroad, 18 Ohio St. 92, and of Goodin v. Canal Co., same vol., 169, are cited. These cases grew out of the conversion of the bed of a canal into that of a railway by agreement with the canal company. Owners of land underlying the canal sought in one case to recover damages, and in the other to enjoin its use by the railroad company and to recover the land. The relief was denied as demanded, but the court held in the Hatch case that they could have damages for the additional servitude to which the land had been subjected, and in the Coodin case compensation for their interest in the land. The ground of the holding was estoppel, the court finding that the plaintiffs had neglected to speak at the proper time. “When a party stands by,” says the opinion in the Coodin case, “ as we must presume plaintiffs to have done in the present case, and *642 silently sees a public railroad constructed upon his land, it is too late for him, after the road is completed, or large sums-have been expended on the faith of his apparent acquiescence, to seek by injunction or otherwise, to deny to the railroad company the right to use the property.” And farther, that the omission to ask injunction at the proper time, “ implies assent.” It is worth while to notice, in passing, that this “assent” of the plaintiffs was assumed by the court from the mere fact of silence. The same principle is recognized in Penna. Co. v. Platt, 47 Ohio St. 366.
We understand the extent of the holdings in the Hatch and Groodin cases to be that, had the plaintiffs not been es-topped by their own conduct to resort to injunction, they might have had that remedy. But the conclusion does not follow, we submit, that they might not, in case they had not been estopped by their own conduct at the time of the appropriation, have exercised a right afterwards to waive the informality of the appropriation, assent to it as an accomplished fact, and ask compensation.
The case of Railroad v. Robbins, 35 Ohio St. 531, is relied upon as sustaining the defendant’s claim. An action originally brought by Josiah Robbins to recover compensation for lands unlawfully taken and damages to residue, and, in. the alternative, f©r a recovery of the land and damages for detention, was revived in the name of his administrators and heirs. The land had been converted by the.company to its use as an additional side track while in the company’s temporary possession for only a temporary purpose by agreement with Mr. Robbins, and without his knowledge. Verdict and judgment were had in the common pleas for plaintiff. In this court the judgment was reversed, the holding, as appears by the syllabus, being that the owner of land which has been unlawfully and wrongfully taken by a railway company cannot maintain an action for the value, and for damages accruing, if the circumstances are such that he may recover the land itself. The authoritative effect of this holding is that, under the circumstances of that case, ejectment might be maintained by the heirs even though a judgment for corn-pen *643 sation should be rendered and paid to the administrators, and, as a consequence, compensation could not be awarded. To understand the circumstances we must refer to the record. On page 538 we find this, by Johnson, J.:
“ This is a case of unlawful and unauthorized use, and a fraudulent appropriation, against the objection of the owner, and is not under a contract of sale, or by acquiescence or other acts, upon the faith of which expenditures have been made; in short, it is an action for the trover and conversion of real estate.
“ It must also be kept in mind that, although the heirs of Robbins are united as plaintiffs with the administrators, they are only nominally such, and there is nothing in the record that would estop them from bringing an action of ejectment to recover the land itself, even though the judgment be paid to the administrators.
“ That Robbins himself was not so estopped is clear, as he took pains to show in his petition, by asking for a recovery of the land in the event he was not entitled to compensation or damages. His heirs have done nothing since to estop them. Neither he, nor they, offer to convey or surrender the title, upon being paid, and neither has done any act, so far as the record shows, that would estop him, or them, from asserting title to this land.”
No fact looking to estoppel appears in the case. All idea of acquiescence on the part of the original plaintiffs, or of the heirs, is distinctly negatived. They pray a recovery of the land in the event that they cannot obtain compensation. No offer is made to part with the legal title. So that, in the judgment of the court, as is clearly indicated by the opinion, had a recovery been had for compensation, and had the same been paid, Mr. Robbins’ heirs might, notwithstanding, have maintained ejectment and recovered the land itself because the legal title would have remained in them.
The opinion emphasizes the importance of the fact, by repeating it, that Mr. Robbins himself had done nothing to estop him from asserting title to the land, and, in like manner, emphasizes the fact that the heirs had done nothing that *644 would estop them from bringing ejectment even though the judgment be paid to the administrators. This implies that the heirs had it in their power to do something which would estop, and that,had that been done, the action for compensation might have been maintained. What could they have done more than tender title and offer to convey upon being paid, and thus ratify the unlawful appropriation ? They could not have acquiesced at the time the seizure was made, for they then were not heirs and had no title. And that this matter of tender was just what was in the mind of the learned judge who wrote the opinion, is clearly shown by the further remark, referring to Mr. Robbins and the heirs, that “ neither he, nor they, offer to convey or surrender the title upon being paid,” The inference seems inevitable that had such tender been made so that the effect of the judgment for compensation would have been to clothe the company with the legal title to the land and thus estop the former owners from maintaining ejectment, the plaintiffs would have been entitled to recover compensation in that action. True, the judge further on, uses this language: “ Our conclusion, therefore, is that the unlawful and wrongful conversion and use of land, against the will of the owner, and under such circumstances that he is not prevented or estopped from recovering possession, will not entitle such owner, while the title still remains in him, to maintain an action to recover a judgment for the value of the land,” etc. This should be taken in connection with what has already been quoted; from all which, as it seems to us, it appears that, had the facts been present which the court emphasizes as absent, a case would have been made in the circumstances which would have prevented the parties from recovering possession.
We are not called upon to question the correctness of the judgment in the Rollins case, upon the facts there existing, but if the meaning of the opinion is that where an owner shows full acquiescence in the unlawful act of the corporation, and tenders conveyance of title, so that the judgment for compensation will clothe the corporation with the legal title and estop him from afterwards seeking recovery of pos *645 session, he still cannot have compensation, then we are not in accord with the holding.
In the present case every circumstance points to acquiescence. Ratification of the unlawful taking appears in all that has been done. It can hardly make any difference that the acquiescence follows, by voluntary acts and declarations, after the wrongful thing is done, rather than by silence while it is being done. As a general rule a party may bind himself as effectually by ratification after the fact as by previous direction, or contemporary assent. What is in the way of that rule having application here ? The legal title is tendered. And, if this were not sufficient, the judgment offered is to be made to operate as a conveyance of the title to the city.
Another point in which the Robbins case differs from the one at bar may have had a bearing in determining the judgment. In that case the land taken was not indispensable to the operating of the railroad, and its reclamation would not have interfered with the public convenience; here a reclamation of the land would practically cut off a portion of a street, and thus seriously inconvenience the public.
The other point insisted on is that wherever the action of the owner, or his acquiescence in the acts of the others, is such as to clearly indicate his intention that the property shall be dedicated to public use, he cannot have compensation, or reclaim. Intention that it shall be dedicated by whom, and in wbat sense? If by himself, in the sense of a voluntary surrender for public uses, then clearly yes; if by the corporation only, in the sense of appropriation to public uses, then as clearly no. As applied to the case made in the amended petition the proposition amounts to this: Where acquiescence is shown that fact necessarily, and in all cases, results in dedication. In other words, an owner of land who, in fact, is willing the municipality shall have his land for a street upon paying him for it, is, inlaw, willing it should'be so taken without pajr. This cannot be the law. Acquiescence is some evidence of intention to dedicate; it is not the intention itself. “ There must be an intention to dedi *646 cate, and an actual dedication on the part of the owner.” Fulton v. Mehrenfeld, 8 Ohio St. 446. This means an actual voluntary surrender. Actual dedication, we take it, means unconditional dedication. This implies an intention to yield up to the public every private right in, and every private right growing out of, the land, leaving no right in the former owner except such as he enjoys in common with the public. How can there be an unconditional dedication to public uses while the owner is demanding pay for his land ? How, under a constitution which denies to the state the right to acquire private property for public uses in time of peace, without first awarding a compensation in money can it be claimed that such acquisition has been made under circumstances shown by the amended petition, where the authorities not only did not first make a compensation, but utterly refuse to make any, and the owners are denying their right to acquire except on condition that compensation may be made ?
Our conclusion is that where, in an action for compensation for land unlawfully taken by a municipal corporation, without knowledge of the owners and devoted to public uses by constructing thereon a street, it appears, that the owners, upon learning that the land has been so taken, acquiesced in the appropriation as an accomplished fact, and ratified it by tendering a sufficient deed of the premises conveying title to the corporation, and by offering to allow judgment, that, upon the value of the land being fixed and payment of the same, plaintiffs should be ordered to convey to the corporation, such acquiescence and ratification will not be treated as a dedication of the land to public uses, but a case is made entitling such owners to compensation for the value of the land.
The sustaining of the demurrer to the second and third defenses of the amended answer is alleged as error. Also, the sustaining of the motion to the defense attempting to set up the statute of limitations. We do not think either question is presented by the record. But if the demurrer to the third defense were under review, we would hold that it *647 ought to have been sustained. That portion of the answer did not constitute a defense for reasons hereinbefore given.
At the trial the court submitted to the jury the question of the value of the land at the time of the taking, which was excepted to by the defendant. The objection is not argued in the brief, and, we presume, is not now insisted upon. We are not, therefore, called upon to determine whether the value should have been fixed as of the time of the taking, or of the commencement of the action, or of the trial. Differing facts might vary the rule, perhaps, in different cases. But it is seriously objected that the trial court erred as to the matter of interest. The jury having, by special verdict, fixed the value of the land at the time of the taking, the court computed the interest to the first day of the trial term, and that, added to the amount found by the jury, was the amount for which judgment was rendered.
Assuming, without holding, that the time of taking was the proper date for the fixing of value, was the action of the court as to interest erroneous? That the plaintiffs were entitled to compensation has been already found. That they could not have full compensation without the addition of interest seems clear. It would not have been error to so charge the jury, and to instruct them that it would be proper to add interest to the value found. That interest is allowable in such cases has been often held by this court, and the authorities cited by defendants, from other states, are not really in conflict with the rule. Railroad v. Koblentz, 21 Ohio St. 334; Railroad v. Cobb, 35 Ohio St. 94; Cincinnati v. Whetstone, 47 Ohio St. 196. Nor is this unjust to the defendant. The city could have had the value ascertained at the time of the taking and could have then paid it. Failing to do this, it cannot complain at having to meet a usual incident of delay in the payment of money. The action of the court appears to us to have been an irregularity, inasmuch as the jury was there to render verdict for the whole damages. Yet we do not see that any substantial right of the city has been prejudiced, and would not feel justified in *648 disturbing the judgment of the special term on account of this action of the court.
We find no error in the record of the special term.
The judgment of reversal will therefore he reversed, and judgment of the special term affirmed.